# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:18CR00025-028 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| ) | |
| **DEVON SCOTT COLEMAN,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*S. Cagle Juhan, Assistant United States Attorney, Abingdon, Virginia, for United States; Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Defendant.*

In this drug conspiracy case, the defendant has moved to suppress statements made by him and items seized from his vehicle after a law enforcement officer stopped his vehicle. The government contends that the officer engaged in a valid *Terry* vehicle stop, while the defendant argues that the officer did not have a reasonable articulable suspicion of criminal conduct to justify the stop. Following an evidentiary hearing and for the following reasons, I will deny the motion.

I.

The relevant facts are not in dispute.[1] While on duty in his police cruiser on the morning of September 20, 2017, David Johnson, a deputy sheriff with the Washington County Sheriff's Office, received a call from the dispatcher stating

---

[1] The facts come largely from the officer's testimony at the hearing and his police cruiser's dash cam video.

that a local public high school administrator had noticed a male individual sleeping in a vehicle parked on the school campus, and that there was a crossbow in the vehicle.

Deputy Johnson responded to the call and arrived at the school at approximately 7:55 a.m. Students and teachers were also arriving at that time. Deputy Johnson pulled into the school's front parking lot, where he saw the high school's assistant principal. The assistant principal identified the vehicle in question, and Deputy Johnson pulled up within feet behind it. The vehicle was stopped across a line dividing two parking spaces, and the rear of the vehicle was in the travel lane between rows of parking spaces. The vehicle was running, and its brake lights were on. As Deputy Johnson exited his vehicle to check on the driver, the other vehicle pulled away. Deputy Johnson reentered his vehicle, turned on his siren, and followed the vehicle. The other vehicle stopped in a parking space, still in the school parking lot.

Deputy Johnson approached the driver's side of the vehicle, and as he did so, he saw the butt end of a crossbow behind the driver's seat of the vehicle. He told defendant Coleman, the driver and sole occupant of the vehicle, that a school administrator had notified the sheriff's office that Coleman had been asleep in the vehicle with a crossbow. Deputy Johnson asked Coleman if there were any weapons in the vehicle, and Coleman told him that there was a handgun and where

it was located.  Deputy Johnson asked Coleman to exit the vehicle.  As Coleman opened the driver's door and began to exit, Deputy Johnson saw a bag containing a green, leafy substance that appeared to be marijuana wedged between the door and the driver's seat.  Deputy Johnson handcuffed Coleman and began conducting a field sobriety test.  Another officer arrived and searched the vehicle and found marijuana, crystal methamphetamine, and a Smith and Wesson .38 caliber handgun.

On October 24, 2018, Coleman was indicted in this court and charged with conspiring to distribute and possess with the intent to distribute methamphetamine, possessing with the intent to distribute methamphetamine, and using a firearm in furtherance of a drug trafficking crime.  Coleman has moved to suppress from evidence at his trial the items found and any incriminating statements made following Deputy Johnson's stop of his vehicle.

II.

Coleman argues that Deputy Johnson stopped him in violation of the Fourth Amendment, and thus the evidence obtained as a result of the stop must be suppressed as fruit of the poisonous tree.[2]

---

[2] Although Coleman alleges that the stop was unlawful, he does not challenge its length or the subsequent search of the vehicle.

"It is well established that the temporary detention of individuals during the stop of an automobile by the police constitutes a seizure no matter how brief the detention or how limited its purpose." *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008).[3] However, a law enforcement officer may temporarily seize and detain a citizen without violating the Fourth Amendment when the officer "'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.'" *United States v. Black*, 525 F.3d 359, 364 (4th Cir. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This reasonable suspicion standard requires a showing of proof that is "considerably less than a preponderance of the evidence." *Branch*, 537 F.3d at 336. "[A] police officer must simply point to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* Reasonable suspicion is based on the circumstances and "cumulative information available to the officer," and it is evaluated objectively, "not on the officer's actual state of mind at the time the challenged action was taken." *Id.* at 337.

"[E]vasive reactions to the presence of police may be considered in determining whether reasonable suspicion exists for an investigatory stop." *United*

---

[3] I have omitted internal quotation marks, alterations, and citations throughout this opinion unless otherwise noted.

*States v. Smith*, 396 F.3d 579, 584 (4th Cir. 2005). Moreover, "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) (finding that vehicle stop was reasonable despite being based on officer's mistaken belief that state law required two operating brake lights). However, "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." *Id.* at 539.

The government contends that Deputy Johnson had reasonable suspicion to stop Coleman's vehicle, and thus the evidence obtained from the stop should not be suppressed. It argues that the information Deputy Johnson received from dispatch, along with the assistant principal's identification of Coleman's vehicle as the one at issue, was sufficient to support reasonable suspicion of criminal activity. In particular, it identifies Virginia statutes prohibiting possessing weapons on school property, trespassing on school property, and illegal parking, as well as common law trespass, as crimes that an officer reasonably could have suspected were being committed. The government adds that Coleman's evasive behavior when Deputy Johnson parked behind him also supports a finding of reasonable suspicion. Coleman counters that the facts do not support a reasonable, particularized suspicion that he was engaged in criminal activity, principally based

on the argument that a crossbow does not fall within the Virginia statute prohibiting weapons on school property.

I agree with the government and find that the facts support a reasonable suspicion that Coleman was engaged in criminal activity when Deputy Johnson stopped his vehicle. First, Deputy Johnson arrived at the school with information that an individual was sleeping in a car parked on school campus with a crossbow. He had received this information from a reliable source — the dispatcher and a school official — and the information was corroborated when the assistant principal identified Coleman's vehicle in the school parking lot. Moreover, the vehicle was parked in a somewhat erratic manner, and its driver began to drive away immediately upon Deputy Sheriff Johnson's arrival. Particularly in light of the fact that these events transpired on a school campus when students and teachers were present, they give rise to an objectively reasonable suspicion that Coleman was committing a crime, namely, possessing a weapon on school property. It is no matter that a crossbow may not be a prohibited weapon under the relevant Virginia statute.[4] Even assuming that Deputy Johnson's belief that a crossbow was a prohibited weapon was mistaken, such a mistake was objectively reasonable.

---

[4] The statute prohibits knowing possession on school property of, among other things, firearms designed to expel projectiles via explosion, knives, razors, pointed blades, and weapons "of like kind." Va. Code Ann. § 18.2-308.1(A) (referencing Va. Code Ann. § 18.2-308(A). Coleman asserts that because a crossbow does not expel projectiles via explosion, it is not a prohibited weapon. However, the government

III.

For the foregoing reasons, it is **ORDERED** that the defendant's Motion to Suppress, ECF No. 319 is DENIED.

ENTER: April 8, 2019

/s/ *James P. Jones*
United States District Judge

---

contends that a crossbow may be a weapon of like kind and thus prohibited. While there appears to be no relevant state judicial construction of the statute, the government's argument is not unreasonable, and the lack of authoritative construction would support a reasonable officer's view of the illegality of the weapon's possession on school property. *See Heien v. North Carolina*, 135 S. Ct. at 540.